**No. 26-4739**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

VIVEK SHAH,
*Plaintiff-Appellant*,

v.

CRAIN COMMUNICATIONS, INC.,
*Defendant-Appellee*.

On Appeal from the United States District Court
for the Central District of California
No. 2:26-cv-03070-RGK-CTS
Honorable R. Gary Klausner, District Judge

**APPELLANT'S OPENING BRIEF**

Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
(224) 246-2874
newvivekshah@gmail.com
*Plaintiff-Appellant, pro se*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

JURISDICTIONAL STATEMENT ...................................................................3

ISSUES PRESENTED..........................................................................................5

STATEMENT OF THE CASE .............................................................................6

    A. The Action Below ......................................................................................6

    B. The Motion ................................................................................................7

    C. The Order ..................................................................................................8

    D. The Catalog Measured Against the Record ............................................10

    E. Dismissal and Appeal.............................................................................11

SUMMARY OF ARGUMENT ..........................................................................12

STANDARD OF REVIEW .................................................................................15

ARGUMENT .......................................................................................................16

    I. THE ORDER'S CENTRAL FINDINGS REST ON MATERIALS
    OUTSIDE THE RECORD AND ON JUDICIAL NOTICE USED FOR
    A PURPOSE RULE 201 FORBIDS..................................................................17

        A. Judicial notice reaches a filing's existence and legal effect, not
        contested characterizations of its contents — a limit Crain itself
        briefed. ...................................................................................................17

        B. The Order's central findings rest on six documents no party
        submitted................................................................................................19

        C. The duplication findings rest on docket sheets, which cannot
        establish the contents of pleadings. ......................................................21

        D. A catalog keyed to absent documents is not an adequate record for
        review, and findings resting on it are clearly erroneous...............................22

        E. Six of the catalogued cases were never presented in the Motion at
        all — five arrived with the reply, one with the Order. ...................................24

        F. Rule 201(e): Shah was entitled to be heard, and the hearing would
        have mattered..........................................................................................25

    II. THE FINDING THAT THE PAYPAL COMPLAINT WAS A
    "NEAR-COPY" OF THE EVANS CLASS COMPLAINT IS CLEARLY
    ERRONEOUS.....................................................................................................26

        A. The finding, and the weight the Order places on it. ...............................26

B. The texts: five percent correspondence, concentrated in a passage Shah has never disputed. ..................................................................28

C. The claims and structure: the two pleadings share no cause of action, no theory, and no facts. ..............................................................29

D. The finding cannot stand, and the Catalog's duplication findings fall with it. ...............................................................................................31

III. THE RECORD DOES NOT SUPPORT THE REQUIRED SUBSTANTIVE FINDINGS OF FRIVOLOUSNESS OR HARASSMENT. ......................................................................................32

A. Claims must be both numerous and patently without merit; the Order made no merits finding at all. ..............................................................32

B. Similarity is not vexatiousness, and the record contains none of what makes it so. ....................................................................................34

C. Filing individually instead of remaining in a class is a protected choice, not evidence of abuse. .................................................................36

D. The Order counted the filings and suppressed their outcomes. .................36

E. The Order violated its own criteria. .........................................................38

F. The harassment inferences are contradicted by the record or prove too much. ..............................................................................................42

IV. THE PRE-FILING ORDER IS NOT NARROWLY TAILORED, AND THE DISTRICT COURT DID NOT CONSIDER LESS RESTRICTIVE ALTERNATIVES. ................................................................46

A. The bar sweeps an entire statutory scheme, plus an undefined residual category, to address a vice the Order defined narrowly. .................47

B. The district court considered one alternative, in one footnote, and answered the wrong question. .....................................................................49

C. The decree supplies no procedure for seeking leave at all. .......................51

CONCLUSION ..........................................................................................................52

STATEMENT REGARDING ORAL ARGUMENT ...........................................54

STATEMENT OF RELATED CASES ...................................................................55

ADDENDUM ....................................................................................Add. 1

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)................................passim

*Bowles v. Russell*, 551 U.S. 205 (2007).................................................................4

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................50

*Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074 (9th Cir. 1999).........3

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)......................................4, 5

*D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) ...............35

*De Long v. Hennessey*, 912 F.2d 1144 (9th Cir. 1990) ...................................passim

*Dixon v. Univ. of S. Cal.*, 2023 WL 411449 (C.D. Cal. Jan. 18, 2023)..................17

*Doran v. Vicorp Restaurants, Inc.*, 407 F. Supp. 2d 1115 (C.D. Cal. 2005)...........34

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .....................................44

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)......................46

*Hayden v. Western Steel, Inc.* (*In re Cashion Family Trust*), 676 B.R. 193
    (B.A.P. 9th Cir. 2025).........................................................................................3

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) ........46

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................46

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)............46

*In re Powell*, 851 F.2d 427 (D.C. Cir. 1988)....................................................24, 42

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ....................................46

*Jules v. Andre Balazs Properties*, 146 S. Ct. 1209, 1217, 224 L. Ed. 2d 708
    (2026)..............................................................................................................41, 42

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)......................18

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ......................................................35

*Langere v. Verizon Wireless Services, LLC*, 983 F.3d 1115 (9th Cir. 2020) ........4, 5

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .................................18, 19

*McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994)................................................44

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)......................................................4, 5

*Mikulsky v. Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225 (9th Cir.
    June 20, 2025)......................................................................................................46

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) ..............passim

*Moy v. United States*, 906 F.2d 467 (9th Cir. 1990)..............................2, 32, 33, 38

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..............44

*Pavilonis v. King*, 626 F.2d 1075 (1st Cir. 1980) ......................................................1

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................36

*Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014).passim

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ........................................................36

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d
    244 (9th Cir. 1992) .........................................................................................18, 21

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc) .................passim

*Wilson v. Pier 1 Imports (US), Inc.*, 411 F. Supp. 2d 1196 (E.D. Cal. 2006) ...35, 44

*Windsor v. Boushie*, 677 F. App'x 311 (9th Cir. 2017) ............................................24

*Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th
    Cir. 1983) ...............................................................................................................47, 48

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) ..........................46

**Statutes**

9 U.S.C. § 16 ..................................................................................................................4

18 U.S.C. § 1956 .........................................................................................................28

18 U.S.C. § 1962 .........................................................................................................29

18 U.S.C. § 1964 ....................................................................................................29, 30

28 U.S.C. § 1291 ...........................................................................................................3

28 U.S.C. § 1331 ....................................................................................................30, 42

28 U.S.C. § 1332 ......................................................................................................3, 30

28 U.S.C. § 1651(a) ......................................................................................................8

Cal. Civ. Code § 3344 ................................................................................................48

Cal. Penal Code § 630 et seq. ....................................................................................48

Cal. Penal Code § 631(a) ....................................................................................passim

Cal. Penal Code § 632.7 .............................................................................................47

Cal. Penal Code § 638.51 ...........................................................................................47

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...........................................................................................4

Fed. R. App. P. 34(a)(2)(C) .......................................................................................54

Fed. R. Civ. P. 11 ...........................................................................................49, 50, 51

Fed. R. Civ. P. 23(f) ......................................................................................................4

iv

Fed. R. Civ. P. 41(a)(1)..............................................................................3, 11, 39

Fed. R. Evid. 201 ................................................................................12, 17, 19, 25

9th Cir. R. 28-2.7 ...................................................................................................6

**Other Authorities**

Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. Empirical Legal Stud. 459 (2004) ....................................................................................................44

## INTRODUCTION

"Courts should not enter pre-filing orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). "The use of such measures against a pro se plaintiff should be approached with particular caution." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)). This case shows what such an order looks like when neither caution is observed.

Crain never answered the complaint in this action. Before the court had ruled on any pleading motion, Crain moved to have Shah declared a vexatious litigant. On July 20, 2026, the district court granted the latter motion in an order (ECF No. 34, "the Order") that designates Shah a vexatious litigant and forbids him to file any new action asserting claims under the California Invasion of Privacy Act — or undefined "other related digital privacy claims" — without advance leave of court.

The Order's foundations do not survive inspection. Its anchor finding — that Shah's complaint against PayPal "was near-copy" of a class action complaint filed by strangers — was made with neither pleading in the record; placed side by side for the first time in this Court, the two documents share five percent of their text and not one cause of action. The Order's listing of Shah's prior proceedings ("the Catalog") rests on six documents no party submitted and on docket sheets treated as if they

1

disclosed the contents of pleadings. The Catalog counts stayed cases while purporting to count only adverse ones, and omits what the record before the court actually showed: claims sustained over dispositive challenges, and a confirmed merits award. And the remedy sweeps an entire statutory chapter, plus an indefinite residual category, behind a two-sentence decree that supplies no procedure for seeking the leave it requires — entered without a hearing, and without consideration of any lesser alternative. The first sanction ever imposed on Shah by any court was the most restrictive one available.

On July 23, 2026, Shah dismissed this action with prejudice, permanently surrendering every claim he held against Crain. The pre-filing order is what survives, and it continues to bind him. "As far as he is concerned, his future filings run the risk of delay and even possible rejection before he can call upon defendants to respond to those filings. He will not even be permitted to enter the lists until a judicial officer gives him permission… What he does know is that a Sword of Damocles hangs over his hopes for federal access for the foreseeable future." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990).

*De Long* permits such an order only where four requirements are satisfied: notice and an opportunity to be heard; an adequate record for review; substantive findings of frivolousness or harassment; and narrow tailoring. Each is an element;

2

the failure of any one requires vacatur. The Order satisfies none of them. It should be vacated.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Shah is a citizen of California. Crain Communications, Inc. is organized under Illinois law with its principal place of business in Detroit, Michigan — a citizen of Illinois and Michigan. The amount in controversy alleged exceeds $75,000, exclusive of interest and costs. ECF No. 23 ¶¶ 8–11.

This Court has jurisdiction under 28 U.S.C. § 1291. A pre-filing order is not appealable when entered — neither as a final decision nor as a collateral order — but "can be reviewed and corrected (if necessary) after final judgment." *Molski*, 500 F.3d at 1055–56. It ripens for review upon final termination of the action.

Termination occurred on July 23, 2026 — three days after the Order — when Shah filed a notice voluntarily dismissing all of his claims with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. 36. Because Crain had served neither an answer nor a motion for summary judgment, *id.*, the notice was self-executing and terminated the action upon filing. *See Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077–78 (9th Cir. 1999). The dismissal rendered the Order final and appealable, *Hayden v. Western Steel, Inc.* (*In re Cashion Family Trust*), 676 B.R. 193, 207 (B.A.P. 9th Cir. 2025) (vexatious-litigant pre-filing orders

3

became "final and appealable" once the underlying cases were dismissed), and did not defeat review: courts retain jurisdiction to impose collateral sanctions after a voluntary dismissal, and such orders remain reviewable. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990).

The Order was entered on July 20, 2026 (ECF No. 34). The action terminated on July 23, 2026, by a dismissal notice that expressly reserved the right to appeal the Order (ECF No. 36), and Shah filed his notice of appeal the same day, after the dismissal (ECF No. 37). The appeal is timely under Fed. R. App. P. 4(a)(1)(A): the thirty days run from the termination that first rendered the Order reviewable, and the notice was filed the day of termination. *See Molski*, 500 F.3d at 1053–56 (notice timely though filed months after the pre-filing orders, within thirty days of dismissal); *Bowles v. Russell*, 551 U.S. 205 (2007).

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017), and *Langere v. Verizon Wireless Services, LLC*, 983 F.3d 1115 (9th Cir. 2020), do not withdraw jurisdiction. Both bar a plaintiff from transforming a non-appealable interlocutory order — a class-certification denial in *Baker*, an arbitration order in *Langere* — into a "final decision" by dismissing and appealing to revive his claims. This appeal differs in three respects. First, no congressionally calibrated interlocutory-review scheme is circumvented: Rule 23(f) and 9 U.S.C. § 16 supplied the avenues those plaintiffs bypassed; for pre-filing orders, *Molski* itself fixes final termination as the moment

4

of reviewability — the event that occurred. Second, reversal revives nothing: Shah's claims remain extinguished with prejudice whatever this Court decides; he challenges only the collateral order restraining his future filings — the *Cooter & Gell* posture, not the claim-revival posture *Baker* and *Langere* condemn. Third, the Order inflicts continuing, redressable injury independent of the dismissed action: it restrains Shah's access to the courts today, and vacatur would lift that restraint — which is also why the appeal is not moot.

## ISSUES PRESENTED

1. Whether the district court abused its discretion in entering a vexatious-litigant pre-filing order whose central findings rest on six documents no party submitted, on docket sheets treated as establishing the contents of pleadings, and on judicial notice used to establish contested characterizations, all without notice or an opportunity to be heard.

2. Whether the finding that Shah's PayPal Complaint was a "near-copy" of the Evans class complaint — the anchor for the Order's catalog-wide duplication findings — is clearly erroneous, where the two pleadings share five percent of their text, no cause of action, and no theory of the case.

3. Whether the record supports *De Long*'s required finding that Shah's filings were both numerous and patently without merit, where the Catalog mischaracterizes dispositions, omits that courts sustained Shah's claims over dispositive challenges in

5

catalogued actions and in an action it excluded from its catalog, and that he holds a confirmed merits award, and infers harassment from the absence of trials — the disposition of approximately 99% of federal civil cases.

4. Whether a pre-filing order that bars the entire California Invasion of Privacy Act plus undefined "other related digital privacy claims," supplies no procedure for seeking leave, and issued without consideration of less restrictive alternatives is narrowly tailored.

Pertinent statutory and rule provisions are reproduced verbatim in the Addendum bound at the end of this brief. *See* 9th Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### A. The Action Below

On March 18, 2026, Vivek Shah ("Shah"), proceeding pro se, filed this action against Crain Communications, Inc. ("Crain"), alleging that third-party software embedded on Crain's website intercepted, in real time, the search terms Shah typed into the site's search bar and transmitted them to third parties, in violation of California Penal Code § 631(a), a provision of the California Invasion of Privacy Act ("CIPA"). (ECF No. 1; Order at 1.) Shah alleges that he documented the interception on or about October 31, 2025, by inspecting his browser's developer tools, and that every search at issue preceded that documentation. (First Am. Compl. ("FAC") ¶¶ 39, 73–74, ECF No. 23 at 16, 29–30.) Shah filed the operative FAC on

June 22, 2026. (ECF No. 23.) Crain moved to dismiss the FAC on July 6, 2026. (ECF No. 26; corrected copy, ECF Nos. 33, 33-1.) Shah opposed on the merits on July 13, 2026. (ECF Nos. 32, 32-1.) Crain filed its reply on July 20, 2026 — the day the Order issued. (ECF No. 35.) The motion was set for hearing on August 3, 2026, with trial set for March 23, 2027. The district court never ruled on it.

**B. The Motion**

On June 1, 2026 — concurrent with its first Motion to Dismiss the original complaint — Crain filed its Motion to Declare Plaintiff a Vexatious Litigant and Require Security ("the Motion"). (ECF No. 12.) The Motion rested on a request for judicial notice of Exhibits A through W, consisting of docket sheets and selected filings and orders from Shah's prior actions ("the Motion RJN"). (ECF No. 12-1.) Shah opposed on June 2, 2026, filing a declaration and exhibits, including a 68-page compilation, Exhibit C, of orders in his prior cases in which courts had denied dispositive motions in whole or in part or sustained his claims. (ECF Nos. 13, 13-1, 13-4.) Crain replied on June 15, 2026 (ECF No. 21), filing a supplemental request for judicial notice of Exhibits X through CC ("the Reply RJN") (ECF No. 21-1) that introduced, for the first time, five additional actions: *Spectraforce*, *Peridio*, *BackOffice*, *Vor Biopharma*, and *Pashion Footwear*. The district court did not hold a hearing; it decided the Motion in chambers, on the papers. (Order at 1.)

7

**C. The Order**

On July 20, 2026, the district court granted the Motion in an eleven-page in-chambers order. (Order Re: Def.'s Mot. to Declare Pl. a Vexatious Litigant, ECF No. 34 ("the Order").) The Order states that "[f]rom 2021 to 2026," Shah "has initiated at least twenty-nine proceedings," and that it "catalogs below only the cases that were determined adversely against, or voluntarily dismissed by, Plaintiff." (Order at 2.) The listing that follows ("the Catalog") contains twenty-nine entries. (Order at 2–7.) In footnote 1, the Order adopts an asterisk convention anchored by its description of Shah's 2022 complaint in *Shah v. PayPal, Inc.* (N.D. Ill.) ("the PayPal Complaint") as a "near-copy" of the class-action complaint in *Evans v. PayPal, Inc.* (N.D. Cal.) ("Evans"), of which, the Order states, "[t]he only substantial difference was the omission of the original class action language"; "[a]ll subsequent cases denoted with an asterisk are cases that were duplicated in similar fashion." (Order at 3 n.1.) Thirteen entries carry the asterisk. Neither the PayPal Complaint nor the Evans complaint appears among the exhibits any party filed. (*See infra* Part I.B; Mot. for Judicial Notice Exs. 1–2.)

Invoking the All Writs Act, 28 U.S.C. § 1651(a), and applying *De Long v. Hennessey*, 912 F.2d 1144 (9th Cir. 1990), and *Molski*, the Order concluded that the briefing supplied notice and an opportunity to be heard; that the Catalog constituted an adequate record; and that Shah's filings were frivolous and harassing. The

harassment findings rest on the Order's characterization of the complaints as "template versions of Plaintiff's own CIPA complaints or copy-and-paste versions of pending class action matters" (Order at 8), on findings that Shah sought out CIPA violations and submitted "enough search queries in an attempt to establish the amount in controversy," dismissed cases "upon a defendant's motion to dismiss," and failed "to try any CIPA (or other claims in the above record) on the merits," from which the court inferred a "purpose . . . to harass defendants into coercive settlements" (Order at 9), on the observation that no catalogued case reached trial, and on an analogy describing Shah's alleged injuries as "avoidable" (Order at 9). In footnote 5 — the sole support cited for the numerosity finding — the Order states that in none of its recent examples had Shah's complaint "made it past the pleading phase," each having been "dismissed voluntarily or by the court at the infancy of the case." (Order at 8 n.5.) The five Reply-RJN cases entered the Catalog with citations to the reply exhibits. (Order at 6–7 (citing ECF Nos. 21-3 to 21-7).) The Order's consideration of less restrictive alternatives is confined to footnote 8, which addresses only a "Security of Costs." (Order at 10 n.8.) The decree provides that a pre-filing order is "entered against Plaintiff for any new case filed in the Central District of California that alleges any claims arising under the California Invasion of Privacy Act ('CIPA') or other related digital privacy claims" (Order at 11); it

9

prescribes no procedure, showing, or standard for seeking leave. (*See infra* Part IV.C.)

### D. The Catalog Measured Against the Record

Several categories of divergence between the Catalog and the record before the district court appear on the face of the materials themselves.

**Cases still in active litigation.** Four catalogued matters were, by the Order's own entries, on appeal in this Court when the Order issued: *JPMorgan Chase*, *Robinhood*, *Russco57*, and *Talentbridge*, each marked "Appeal pending before the Ninth Circuit." (Order at 6–7; *see* ECF No. 13-1 ¶ 5.) A fifth was on appeal in state court: the Catalog reports WPromote's disposition as "Complaint dismissed" (Order at 4), but the record before the court showed that dismissal on direct appeal in the California Court of Appeal — fully briefed since January 27, 2026 — when the Order issued. *Shah v. WPromote, LLC*, No. B350071 (Cal. Ct. App., 2d Dist.); (ECF No. 13-3 at 4–9.) Two more were live and stayed on the day the Order issued: *Amplitude*, "stayed pending final resolution of" a parallel class action since December 3, 2024 (Order at 5), and *Udemy*, "[s]tayed by Joint Stipulation; pending arbitration" (Order at 7). *Udemy* — the twenty-ninth entry — appears in neither the Motion nor the Reply, carries no exhibit citation, and fits neither of the Order's stated criteria. Both actions ended only after the Order issued, and each ended by a stipulation the defendant signed: the *Udemy* parties settled and dismissed with

10

prejudice on July 23, 2026, with no prevailing party, and the *Amplitude* parties dismissed with prejudice by joint stipulation under Rule 41(a)(1)(A)(ii) on July 24, 2026, each side bearing its own costs and fees. (Mot. for Judicial Notice Exs. 3–4.)

**Favorable outcomes.** The Catalog's criteria excluded every case in which Shah's claims were sustained, and the Order engages none of the favorable rulings Shah placed before the court. Within the Catalog itself, *Citibank II* ended after the court denied Citibank's motion to dismiss in full on February 12, 2025 (ECF No. 13-4 at 68); *Citibank I* ended in a confirmed arbitration award in Shah's favor, reduced to judgment on February 15, 2024 (ECF No. 13-1 ¶ 4; ECF No. 13-3 (Decl. Ex. B)); and in *JPMorgan Chase*, claims survived two rounds of Rule 12 briefing (ECF No. 13-4 at 12, 24). Outside the Catalog, *Shah v. Capital One, N.A.* — in which the court sustained Shah's ECOA claim on April 7, 2025 and, on May 7, 2026, denied dismissal as to every claim but one — appears nowhere in the Order, although it was before the district court in Shah's declaration and Exhibit C. (ECF No. 13-1 ¶ 9(d)–(e); ECF No. 13-4 at 25–39, 40–63.) These rulings, and the further discrepancies apparent on the Order's face, are addressed in Parts I and III below.

## E. Dismissal and Appeal

On July 23, 2026, Shah voluntarily dismissed his claims with prejudice under Rule 41(a)(1)(A)(i) — available as of right because Crain had served neither an answer nor a summary-judgment motion — by a notice expressly reserving his right

to appeal the Order and disclaiming any adoption of or acquiescence in it. (ECF No. 36 at 1–3.) The same day, Shah filed a timely notice of appeal from the Order. (ECF No. 37.)

## SUMMARY OF ARGUMENT

*De Long* permits a pre-filing order only where four requirements are met: notice and an opportunity to be heard; an adequate record for review; substantive findings that the litigant's actions are frivolous or harassing; and an order narrowly tailored to the specific vice found. 912 F.2d at 1146–48. Each requirement is an element, and the failure of any one requires vacatur. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014). The Order fails all four.

**I.** The Order's central findings were made on materials outside the record, through judicial notice put to a use Rule 201 forbids. Notice of another court's filing establishes the document's existence and legal effect — not contested characterizations of its contents — a limit Crain itself briefed below. Yet the Order's dispositive findings — "near-copy," "duplicated in similar fashion," "template versions," "copy-and-paste" — are comparison conclusions resting on six documents no party submitted, including both pleadings in the comparison the Order treats as its anchor, and two cases named as the "origin" of Shah's complaints that appear nowhere in any paper filed by anyone. Seven Catalog entries characterize complaints for which the record holds only docket sheets. Five cases surfaced for

12

the first time in Crain's reply; one surfaced for the first time in the Order itself. A catalog keyed to absent documents is not an adequate record for review, and findings built on materials the parties never joined issue upon were made without a meaningful opportunity to be heard. A finding cannot be "plausible in light of the record viewed in its entirety" when its evidentiary basis is not in the record at all.

**II.** The anchor finding is also clearly erroneous. Placed side by side — as they never were below — Shah's PayPal Complaint and the Evans class complaint share 5.09% of their text; 91.2% of the overlap sits inside the single Preliminary Statement passage Shah has always acknowledged tracking; 33 words overlap anywhere else. The pleadings share none of their twelve combined causes of action and differ in defendants, legal theories, jurisdictional basis, structure, and relief. The Order's declaration that "[t]he only substantial difference was the omission of the original class action language" cannot survive the documents themselves. Because the Order makes that finding the template for every asterisked "duplicated" entry, its collapse carries the Catalog's duplication characterizations with it.

**III.** Even taken as compiled, the record cannot support the required substantive findings. A litigant's filings must be both numerous and patently without merit; litigiousness alone is not enough. The Order made no merits finding at all, although Crain's Rule 12 motion against the operative pleading was pending on the same docket when it issued. Using prior complaints as a template is not inherently

13

vexatious, and filing individually rather than remaining an absent class member is a choice the law protects. The Catalog counts stayed cases while purporting to list only adverse or voluntarily dismissed ones; it mischaracterizes dispositions; and it omits what the record before the court showed — dispositive motions denied, in full or in relevant part, in Citibank II, Chase, and, twice, in the omitted Capital One action, and a confirmed merits award, and a fully briefed state appeal from a catalogued dismissal. The harassment inferences fare no better: the "avoidable injury" inference is inverted by the operative complaint's own table; the absence of trials describes the disposition of approximately 99% of federal civil cases; settlement-linked dismissal is conduct the law encourages; and the coercive-settlement finding rests on no record evidence at all.

**IV.** The remedy is not narrowly tailored. The vice the Order identifies is repetitive Penal Code § 631(a) website-interception filings; the decree bars the entire California Invasion of Privacy Act plus "other related digital privacy claims" — an indefinite term of the kind *Ringgold* condemns, and broader than the language the Order's own tailoring analysis approved. The court weighed no lesser alternative — no motion for sanctions was ever presented in any catalogued proceeding — although *Ringgold* holds it assuredly should have, and that failure alone warrants vacatur. And the two-sentence decree supplies no procedure, standard, or timeline

14

for the leave it requires, compounding the overbreadth and leaving the restraint effectively unreviewable in application.

The Order should be vacated. In the alternative, it should be vacated and the matter remanded.

## STANDARD OF REVIEW

This Court reviews a pre-filing order entered against a vexatious litigant for abuse of discretion. *Molski*, 500 F.3d at 1056. A district court abuses its discretion when it "bases its decision on an incorrect view of the law or a clearly erroneous finding of fact." *Id.* at 1056–57; *accord United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (a finding is clearly erroneous when it is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record").

Findings of fact are reviewed for clear error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). A finding is clearly erroneous when the reviewing court is left with "the definite and firm conviction that a mistake has been committed," and it cannot stand unless it is "plausible in light of the record viewed in its entirety." *Id.*

The requirements of *De Long* — (1) notice and an opportunity to be heard; (2) an adequate record for review; (3) substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) an order narrowly tailored to closely

15

fit the specific vice encountered — are each necessary to a valid pre-filing order, and the failure of any one requires vacatur. 912 F.2d at 1146–48; *Ringgold-Lockhart*, 761 F.3d at 1062.

Issue 2 presents a question of fact reviewed for clear error under *Anderson* and *Hinkson*. Issues 1, 3, and 4 present the Order's compliance with *De Long*'s procedural, substantive, and tailoring requirements, each reviewed under the abuse-of-discretion standard stated above — under which reliance on a clearly erroneous finding, or on an incorrect legal standard, is itself an abuse of discretion. *Molski*, 500 F.3d at 1056.

## ARGUMENT

The four *De Long* requirements structure the argument. Part I addresses the first two: the Order's central findings rest on documents outside the record, noticed without an opportunity to be heard, and the Catalog built from them is not an adequate record for review. Part II demonstrates, with the one comparison that can now be run, that the Order's flagship finding is clearly erroneous. Part III shows that the substantive standard — filings both numerous and patently without merit — fails even on the record as the district court compiled it. Part IV addresses the remedy: an order that is not narrowly tailored and issued without consideration of less restrictive alternatives. Failure of any one requirement requires vacatur. *De Long*, 912 F.2d at 1146–48; *Ringgold-Lockhart*, 761 F.3d at 1062.

16

## I. THE ORDER'S CENTRAL FINDINGS REST ON MATERIALS OUTSIDE THE RECORD AND ON JUDICIAL NOTICE USED FOR A PURPOSE RULE 201 FORBIDS.

The Order's dispositive findings — that Shah's complaint against PayPal "was near-copy" of a class action complaint filed in another district, and that the twelve other catalogued cases marked with an asterisk "were duplicated in similar fashion" (Order at 3 n.1) — cite no evidence in the record, because there is none. The findings rest on six documents no party submitted, on docket sheets treated as establishing the contents of pleadings, and on judicial notice extended to contested characterizations that Rule 201 places beyond its reach. Each defect is independently fatal under *De Long*. Together, they mean the Order's central findings were made on materials the parties never joined issue on and that this Court cannot now review.

### A. Judicial notice reaches a filing's existence and legal effect, not contested characterizations of its contents — a limit Crain itself briefed.

Crain told the district court what judicial notice of other courts' filings can and cannot accomplish. Seeking notice of its reply exhibits, Crain represented that "the notice is explicitly directed to the existence and legal effect of those judicial documents, rather than the truth of any disputed factual assertions contained within them." ECF No. 21-1 at 3 (citing *Dixon v. Univ. of S. Cal.*, 2023 WL 411449, at 4 (C.D. Cal. Jan. 18, 2023), aff'd, 2024 WL 866028 (9th Cir. Feb. 29, 2024))*; see also* ECF No. 12-1 at 5 (identical sentence in the Motion RJN). And the rule Crain invoked for noticing other courts' proceedings carries the same limit on its face:

17

courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992),* quoted at\* ECF No. 21-1 at 3. Notice of "proceedings" establishes that proceedings occurred and what orders issued in them — not the truth of any contested matter asserted within them.

That is settled law. A court may notice matters of public record, "but a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). When the noticed matter is another court's filing, notice extends to the document's existence — "not for the truth of the facts recited therein." *Id.* at 690. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). *Lee* reversed precisely because the district court crossed that line, "taking judicial notice of disputed matters of fact to support its ruling." 250 F.3d at 690. And a court taking notice "must also consider — and identify — which fact or facts it is noticing." *Khoja*, 899 F.3d at 999. The Order does neither: it never rules on either request for judicial notice and never identifies any noticed fact. It simply uses the exhibits — and then goes far beyond them.

18

The Order's operative findings sit on the forbidden side of the line. "[N]ear-copy" (Order at 3 n.1); "duplicated in similar fashion" (*id.*); "template versions of Plaintiff's own CIPA complaints or copy-and-paste versions of pending class action matters" (Order at 8); "nearly identical to the Complaint in this matter" (Order at 8 n.5); refiled "without any noticeable changes" (Order at 9). Whether one pleading copies another is not a fact "accurately and readily determined" from a docket's face, Fed. R. Evid. 201(b)(2); it is a comparison conclusion — contested, characterization-laden, and provable only by placing the documents side by side in evidence. The existence, dates, and dispositions of Shah's prior cases were proper subjects of notice. The findings that his pleadings duplicate one another, and duplicate other litigants' pleadings, were not.

## B. The Order's central findings rest on six documents no party submitted.

The defect here runs deeper than *Lee*'s scope limit: for the documents on which the key findings depend, there was nothing in the record to notice at all. Six documents drive the Order's findings. None appears among the Motion RJN's Exhibits A–W (ECF No. 12-1) or the Reply RJN's Exhibits X–CC (ECF No. 21-1).

The cleanest examples are *Ransom v. Mondelez Global LLC*, No. 1:24-cv-06216 (S.D.N.Y.), and *Kouyate v. The Harvard Drug Group LLC*, No. 1:24-cv-06223 (S.D.N.Y.). The Order names each as the "[o]rigin of complaint" for a catalogued Shah action (Order at 4 n.3, 5 n.4), supplying the asterisk — the

19

duplicated-complaint designation — for the Mondelez and Harvard Drug entries. Neither case is mentioned in any paper filed by either party. Neither complaint, nor even a docket, is in the record. The "origin" findings were constructed entirely outside it.

The same is true of the finding that anchors the whole Catalog. Footnote 1 declares that "Plaintiff's Complaint was near-copy of the class action complaint filed in *Evens* [sic] *et al v. Paypal, Inc.*, No. 5:22-cv-00248-BLF (N.D. Cal. filed Jan. 13, 2022)," that "[t]he only substantial difference was the omission of the original class action language," and that "[a]ll subsequent cases denoted with an asterisk are cases that were duplicated in similar fashion." Order at 3 n.1. The *Evans* complaint appears nowhere in the record, and the case is named nowhere in the Motion, the opposition, or the reply. The other pleading in that comparison — Shah's own PayPal Complaint — is equally absent: Exhibit V is the PayPal *docket* only, described in Crain's own index as a "Case Docket, showing the case was ultimately dismissed by stipulation." ECF No. 12-1 at 4. The district court thus declared one pleading a near-copy of another with neither pleading before it.

Two more. *Citibank II* is counted toward the "at least twenty-nine proceedings" (Order at 2, 4) yet it carries no exhibit citation; the record's Citibank exhibits (Exs. R and CC) belong to *Citibank I*, a different action in a different district. Footnote 2 then adds a docket fact — that Shah "retained counsel" in that action after

20

filing the complaint (Order at 4 n.2) — drawn from a docket that is not in the record. And *Shah v. Udemy, Inc.* is catalogued, asterisked as a duplicated complaint, and counted, although neither its complaint nor its docket was ever filed, and the case surfaced for the first time anywhere in this litigation in the Order itself. Order at 7; *see infra* Part I.E.

Crain's answer below and here will be that courts may notice other courts' records. Its own authority concedes the limit: *Robinson Rancheria* permits notice of proceedings' existence and outcomes, not of the truth of contested matters within them — and even that rule presupposes some record of the proceeding to notice. For *Ransom*, *Kouyate*, *Citibank II*, and *Udemy*, there was none. For *Evans* and *Shah v. PayPal*, there were no pleadings to compare.

## C. The duplication findings rest on docket sheets, which cannot establish the contents of pleadings.

Footnote 1's asterisk convention condemns every marked case as "duplicated in similar fashion." Thirteen Catalog entries carry the asterisk. For seven of them, the record contains no complaint at all: PayPal (Ex. V — docket), Plaid (Ex. S — docket), Mondelez (Ex. J — docket), Amplitude (Ex. D — docket), Harvard Drug (Ex. N — docket), Talentbridge (Ex. W — an order on a motion to dismiss), and Udemy (no exhibit of any kind). A docket sheet can establish that a complaint was filed, when it was filed, and how the action ended. It cannot establish what the

21

complaint alleged, and it cannot establish that the complaint's text duplicates another pleading — least of all one that is itself outside the record.

The same gap underlies the numerousness finding, which the Order states twice: seven complaints filed in the past seven months, each containing "nearly identical allegations" (Order at 1), "all of which are nearly identical to the Complaint in this matter" (Order at 8 n.5 — footnote 5 is the finding's sole record support). In neither passage are the seven complaints identified. At most six candidate complaints from that period appear anywhere in the record. A finding that seven unidentified documents are "nearly identical" to the operative complaint, where the record contains at most six of them, is not a finding drawn from the record. It is a conclusion the record cannot express.

### D. A catalog keyed to absent documents is not an adequate record for review, and findings resting on it are clearly erroneous.

*De Long*'s second requirement is that the district court compile an adequate record: "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." 912 F.2d at 1147. The cases satisfying that requirement show what an adequate record looks like. In *Molski*, the district court had "a complete list of the cases filed by Molski in the Central District of California, along with the complaints from many of those cases," and its order outlined and discussed them. 500 F.3d at

22

1059. In *Ringgold-Lockhart*, the court appended an itemized list of twenty-one filings and drew on a reasoned state appellate decision documenting the litigation history. 761 F.3d at 1063–64. The Catalog here inverts that model: its central characterizations are keyed to documents absent from the record entirely, and its duplication findings to docket sheets that cannot carry them. A listing whose load-bearing entries point at nothing this Court can examine is not an adequate record *for review*. The evidentiary defect is therefore also the failure of a required element, and failure of any *De Long* requirement requires vacatur. *De Long*, 912 F.2d at 1146–48; *Ringgold-Lockhart*, 761 F.3d at 1062.

The same defect makes the findings clearly erroneous. A finding survives clear-error review only if it is "plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 573–74. A finding whose evidentiary basis is not in the record at all cannot be plausible in light of that record — there is nothing in the record for it to be plausible in light of. Findings resting on such a foundation are clearly erroneous, and an order resting on clearly erroneous findings is an abuse of discretion. *Hinkson*, 585 F.3d at 1262; *Molski*, 500 F.3d at 1056. This Court's treatment of the co-plaintiff in *Ringgold-Lockhart* is instructive: it reversed the pre-filing order against him because the state-court history the district court relied on was not attributable to him. 761 F.3d at 1065–66. Litigation history not properly connected to the litigant cannot support the order; litigation history not in the record

23

stands on no better footing. Nor is any of this harmless. The adequate record is an element, not a formality; and footnote 1's asterisk convention makes the *Evans* near-copy finding the anchor for every duplication characterization in the Catalog. If the anchor was found without evidence, the Catalog's duplication findings fall with it. *See infra* Part II.

### E. Six of the catalogued cases were never presented in the Motion at all — five arrived with the reply, one with the Order.

A distinct and narrower defect implicates *De Long*'s first requirement. Crain's Reply RJN, filed June 15, 2026 — after Shah's opposition — added Exhibits X–CC. Five catalogued cases entered the record only then: *Vor Biopharma*, *BackOffice*, *Pashion Footwear*, *Spectraforce*, and *Peridio*, which the Catalog accordingly cites to reply exhibits. Order at 6–7 (citing ECF Nos. 21-3 to 21-7). A sixth, *Udemy* — filed June 13, 2026, two days before the Reply RJN, and omitted from it — appears for the first time in the Order itself, with no exhibit citation. Order at 7.

Before a pre-filing order may issue, the litigant must have "an opportunity to oppose the order before it [is] entered," *De Long*, 912 F.2d at 1147; "[d]ue process requires notice and an opportunity to be heard," *id.* (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)). The Order held the requirement satisfied because the issue arrived by noticed motion and Shah filed an opposition. Order at 2 (citing *Windsor v. Boushie*, 677 F. App'x 311, 311–12 (9th Cir. 2017)). A written opposition

24

satisfies *De Long* only as to what the litigant could oppose. It cannot answer exhibits filed after it, and it cannot answer a case no party presented at any point. As to six of the twenty-nine catalogued cases — a fifth of the Catalog — Shah had no opportunity to be heard at all. Unlike the documents addressed in Part I.B, most of these materials are in the record; the defect is when, and how, they arrived.

### F. Rule 201(e): Shah was entitled to be heard, and the hearing would have mattered.

Finally, even where a court takes judicial notice on its own, "the party is still entitled to be heard" on the propriety of notice and the nature of the fact noticed. Fed. R. Evid. 201(e). The district court noticed *Evans*, *Ransom*, *Kouyate*, and the *Udemy* filing sua sponte — no party requested notice of any of them — and afforded no opportunity to respond before or after. The opportunity was not an empty formality. Heard, Shah would have shown what Part II now demonstrates with both pleadings before this Court by companion motion: the *Evans* complaint and the PayPal Complaint share roughly five percent of their text and not a single cause of action. *See infra* Part II. He would have explained that the Udemy action applied a three-week-old, unanimous Supreme Court decision preserving a federal forum for federal Wiretap Act claims. *See infra* Part III.E. The absence of that rebuttal from

the record below is the product of the procedure the district court used — not of waiver.[1]

## II. THE FINDING THAT THE PAYPAL COMPLAINT WAS A "NEAR-COPY" OF THE EVANS CLASS COMPLAINT IS CLEARLY ERRONEOUS.

### A. The finding, and the weight the Order places on it.

Footnote 1 of the Order states: "Plaintiff's Complaint was near-copy of the class action complaint filed in *Evens* [sic] *et al v. Paypal, Inc.*, No. 5:22-cv-00248-BLF (N.D. Cal. filed Jan. 13, 2022). The only substantial difference was the omission of the original class action language. All subsequent cases denoted with an asterisk are cases that were duplicated in similar fashion, from either a case unrelated to him, or a case he has filed previously." (Order at 3 n.1.)

The footnote does double duty. It is a finding about two specific pleadings, and it is the definition that every asterisk in the Catalog incorporates: each subsequently asterisked entry is found to have been "duplicated in similar fashion" to the PayPal–Evans exemplar. The exemplar likewise underwrites the Order's

---

[1] The Catalog's clerical condition confirms it was not assembled for review: the first entry cites "Ex. A, ECF No. 12-22," pairing an exhibit letter and a docket attachment that belong to two different exhibits — Exhibit A is the *Russco57* composite (ECF No. 12-4) and *NYP Holdings* is Exhibit Q (ECF No. 12-20) (Order at 2); the Order counts "at least twenty-nine proceedings" (Order at 2) but "at least twenty-eight proceedings across four courts" (Order at 10 n.8); the *Spectraforce* entry lists "Date Filed: January 1, 2022" for an action docketed in 2025 (Order at 6); and the *Gannett* citation omits the month of decision (Order at 5).

numerosity finding, which rests on a record of "substantially similar complaints (either template versions of Plaintiff's own CIPA complaints or copy-and-paste versions of pending class action matters)" (Order at 8), and its burden finding, which rests on "repeated filings of a complaint template" (Order at 10). The near-copy finding is the anchor. It is also demonstrably false.

The district court made the finding without either pleading before it: neither the PayPal Complaint nor the Evans complaint appears in the Motion RJN or the Reply RJN, and the only PayPal exhibit is a docket sheet. *See supra* Part I.B. Both pleadings are now before this Court by a companion motion for judicial notice, which asks the Court to notice their existence and their contents — what each pleading states on its face — and not the truth of any allegation in either. On that limited and proper basis, the comparison the district court never performed can be performed here. A finding of fact is clearly erroneous when the reviewing court, on the entire evidence, "is left with the definite and firm conviction that a mistake has been committed," *Anderson*, 470 U.S. at 573, and a finding is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record" under *Hinkson*, 585 F.3d at 1262. This finding fails that standard on the face of the two documents.

27

### B. The texts: five percent correspondence, concentrated in a passage Shah has never disputed.

Shah does not dispute that the Preliminary Statement of the PayPal Complaint (¶¶ 3–14) tracks the Preliminary Statement of Evans. The question is whether that concession supports the finding actually made — that the pleading as a whole was a "near-copy" whose "only substantial difference" was the omission of class allegations. It does not.

The body of the PayPal Complaint (¶¶ 1–169) contains 7,345 words; the body of the Evans complaint (¶¶ 1–229) contains 10,522. Measured by runs of ten or more consecutive words appearing identically in both documents, 374 words of the PayPal Complaint — 5.09 percent — correspond to Evans. The remaining 6,971 words, 94.91 percent of the pleading, have no such correspondence. Of the PayPal Complaint's 6,981 unique ten-word sequences, 221 — 3.17 percent — appear in Evans.

The correspondence is not only small; it is confined almost entirely to the conceded passage. Of the 374 corresponding words, 341 — 91.2 percent — fall within the Preliminary Statement. The 33 corresponding words outside it appear in exactly two places: paragraph 19 of the PayPal Complaint, a twenty-one-word generic description of PayPal's business that also appears in Evans paragraph 29, and paragraph 127, twelve words of statutory text quoted from 18 U.S.C. §

1956(c)(4).[2] A pleading ninety-five percent of whose words have no counterpart in the comparator is not a near-copy of it under any ordinary meaning of those words.

### C. The claims and structure: the two pleadings share no cause of action, no theory, and no facts.

The Order's statement that "[t]he only substantial difference was the omission of the original class action language" (Order at 3 n.1) cannot survive the pleadings' tables of contents. The two complaints share no cause of action. The PayPal Complaint pleads three: civil RICO under 18 U.S.C. § 1962(c) and (d), with predicate acts under 18 U.S.C. §§ 1960(a) and 1956 and an underlying offense under 12 U.S.C. § 378(a)(2), and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Evans pleads nine: conversion; RICO under 18 U.S.C. § 1964(c) with mail- and wire-fraud predicates under 18 U.S.C. §§ 1341 and 1343; the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq.; breach of written contract; breach of fiduciary duty; California Business and Professions Code § 17200; unjust enrichment; declaratory relief; and an accounting. Of the twelve causes of action pleaded across the two documents, the overlap is zero.

---

[2] The comparison was constructed to favor the finding under review: both pleadings were reduced to their numbered-paragraph text as filed; a word was counted as corresponding whenever it fell within any matching ten-word run, however generic; and no deduction was made for quoted statutory language or for the parties' common description of the defendant's business. The pleadings themselves, Exhibits 1 and 2 to the companion motion, govern, and any discrepancy is to be resolved against the comparison.

29

Every structural feature diverges as well. The defendants differ: PayPal, Inc. and Daniel H. Schulman individually in Shah's action; PayPal, Inc. and Doe defendants in Evans. The posture differs: an individual, verified, pro se complaint against a putative class action brought by four counsel of record at two firms. The jurisdictional basis differs: 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 and 1367 against the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The districts differ, and the state law invoked differs — Illinois against California. Even within the shared RICO label the architecture is opposite: Shah pleads PayPal itself as the enterprise and Schulman as the "person," with unlicensed-money-transmitting and money-laundering predicates resting on an unlawful-deposit-taking offense; Evans pleads an association-in-fact enterprise with mail- and wire-fraud predicates and no underlying offense. The theories of the case differ — that PayPal operates as an unlicensed bank, of which the freeze of Shah's account is one consequence, against the theory that PayPal converts user funds under an unenforceable liquidated-damages clause. The facts differ: Shah's own account history from 2005 to 2020, including the February 4, 2020 freeze of $3,332.86, against the experiences of three named class representatives. The relief differs. The omitted class allegations are not the "only substantial difference" between these pleadings; they are among the smaller ones.

30

### *D. The finding cannot stand, and the Catalog's duplication findings fall with it.*

A finding that two documents are near-copies, when 94.91 percent of one has no counterpart in the other and the two share not a single claim, theory, or operative fact, is not "plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 573–74. It leaves precisely the definite and firm conviction of mistake that requires reversal, and under *Hinkson* it is without support in any inference the two documents permit.

The error does not stay in footnote 1. The asterisk convention defines every asterisked Catalog entry by reference to this exemplar; when the exemplar fails, each dependent "duplicated in similar fashion" characterization loses its benchmark, and with it the numerosity finding built on "copy-and-paste versions of pending class action matters" and the burden finding built on "repeated filings of a complaint template." (Order at 8, 10.) Whether textual similarity could ever supply the required substantive findings is addressed below, *see infra* Part III.B; the point here is narrower. The one comparison that can now actually be run refutes the Order's flagship example of duplication. Because the substantive findings required by *De Long*, 912 F.2d at 1148, rest on that clearly erroneous foundation, the Order cannot stand. *Hinkson*, 585 F.3d at 1262.

31

## III. THE RECORD DOES NOT SUPPORT THE REQUIRED SUBSTANTIVE FINDINGS OF FRIVOLOUSNESS OR HARASSMENT.

*De Long*'s third requirement demands "substantive findings as to the frivolous or harassing nature of the litigant's actions." 912 F.2d at 1148. Even taking the Catalog as compiled — setting aside the defects established in Parts I and II, *supra* — the record cannot sustain either finding. The frivolousness finding rests on resemblance among complaints, and resemblance is not frivolousness. The harassment finding rests on inferences the pleaded record contradicts. And both findings were made while the favorable outcomes Shah placed before the court at ECF No. 13 went unmentioned.

### A. Claims must be both numerous and patently without merit; the Order made no merits finding at all.

"An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990); *accord Ringgold-Lockhart*, 761 F.3d at 1064 ("Litigiousness alone is not enough"). The conjunction does real work: courts must examine "both the number and content of the filings," and "the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as 'vexatious.'" *Molski*, 500 F.3d at 1059, 1061. Nor is a jurisdictional dismissal a merits failure: "Merely because a claim lacks jurisdiction does not make the claim per se frivolous." *De Long*, 912 F.2d at 1148.

32

Yet jurisdictional dismissals populate the Catalog: *Russco57* was dismissed for failure to establish subject-matter jurisdiction (Ex. A, ECF No. 12-4), *Talentbridge* under Rule 12(b)(1) for an inadequately alleged amount in controversy (Ex. W, ECF No. 12-26), and the *Pashion Footwear* petition for an unalleged jurisdictional basis (Reply RJN Ex. Z, ECF No. 21-5) — dispositions that say nothing about whether the claims pleaded were sound.

The Order never performed the content half of the inquiry. It identified no complaint whose allegations fail as a matter of law, no element any pleading could not satisfy, no authority foreclosing any claim Shah asserted. It substituted a finding of resemblance for a finding of meritlessness. A designation that requires "patently without merit," *Moy*, 906 F.2d at 470, cannot rest on a record in which no filing was ever found to lack merit.

Nor was the merits question unavailable below. Crain's Rule 12 motion attacking the operative pleading in this very action was pending on the same docket when the Order issued, and became fully briefed that very day; the Order neither resolves it nor mentions it. (ECF Nos. 26, 32, 33-1, 35). The district court thus found Shah's CIPA filings "patently without merit" while the only merits challenge ever directed at one of them in this case awaited its decision. And that motion did not describe a baseless claim. Crain argued that Shah's particular search terms were too generic to be actionable, while expressly acknowledging that searches "involving

33

sensitive information, such as health information, can be actionable" and that "unique search terms" may be protectible. (ECF No. 26 at 21 n.5.) A contention that a plaintiff pleaded the wrong facts under a concededly viable theory is a merits dispute, not a showing of frivolousness — and it is the only merits contention anyone placed before the district court.

### B. Similarity is not vexatiousness, and the record contains none of what makes it so.

The Order found Shah's filings "sufficiently numerous" by "[c]onsidering Plaintiff's extensive record of substantially similar complaints (either template versions of Plaintiff's own CIPA complaints or copy-and-paste versions of pending class action matters)." Order at 8. That is a finding of similarity, and the Ninth Circuit has held that "the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant," because "there is nothing inherently vexatious about using prior complaints as a template." *Molski*, 500 F.3d at 1061. District courts in this Circuit apply the same rule: "[t]here is nothing inherently wrong with boilerplate complaints" provided counsel has a basis for each, *Doran v. Vicorp Restaurants, Inc.*, 407 F. Supp. 2d 1115, 1119 n.5 (C.D. Cal. 2005) (219 similar suits; vexatious-litigant designation refused), and a campaign of more than a thousand boilerplate suits filed by the same counsel did not

34

warrant the designation absent any "showing of duplicity," *Wilson v. Pier 1 Imports (US), Inc.*, 411 F. Supp. 2d 1196, 1200–01 (E.D. Cal. 2006).

What separated permissible template litigation from vexatious duplication in *Molski* was not resemblance but falsity. The district court there found the plaintiff's injury allegations "contrived and not credible": he pleaded essentially identical physical injuries suffered thirteen times in a single five-day period. 500 F.3d at 1051–52. Similar complaints support a vexatiousness finding only in combination with contrived or false allegations and a motive to extract settlements rather than obtain relief — the combination *Molski* found dispositive. *Id.* at 1059–61; *Wilson*, 411 F. Supp. 2d at 1200–01.

That combination is absent here. The Order contains no finding that any allegation in any of Shah's complaints was fabricated, exaggerated, or untrue — not one pleaded search, one pleaded interception, one pleaded defendant practice found not to have occurred. Its harshest characterization of content is resemblance itself. And resemblance is unremarkable where the underlying conduct recurs: website operators deploy the same third-party tracking technologies across an industry, so similar violations yield similar pleadings — the same practical logic *Molski* accepted when it observed that accessibility barriers "can be, and often are, similar in different places of public accommodation." 500 F.3d at 1061. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008); *Langer v. Kiser*, 57 F.4th

35

1085, 1097 (9th Cir. 2023) (ADA "testers need not take every claim to trial in order for their intentions to be credible").

### C. Filing individually instead of remaining in a class is a protected choice, not evidence of abuse.

The Order's second similarity theory — that some complaints were "copy-and-paste versions of pending class action matters," Order at 8 — condemns conduct due process protects. An absent class member must be given notice of the right to opt out of the class and to pursue his claim individually. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994). Due process itself requires that he receive "an opportunity to remove himself from the class," *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985), precisely so that a member who prefers to press his claim individually may do so, *see id.* at 811–12. A class member who exercises that right will naturally plead the same defendant conduct the class complaint pleads — it is the same conduct. Treating that overlap as an index of vexatiousness converts the exercise of a constitutional opt-out right into evidence of abuse — it would brand every opt-out plaintiff a copyist. The one such comparison that can actually be run refutes even the Order's flagship example. *See supra* Part II.

### D. The Order counted the filings and suppressed their outcomes.

The finding of a pattern of meritless litigation cannot survive the record Shah placed before the district court at ECF No. 13 — a record the Order nowhere

36

meaningfully engages. Courts repeatedly sustained Shah's claims over dispositive challenges in the very actions the Order counts, and in one it excluded:

In *Shah v. Citibank* ("Citibank II"), Catalog item 9, the court denied Citibank's motion to dismiss in its entirety: "The motion is denied. Defendant shall answer the complaint within 14 days." ECF No. 13-4 at 68 (Feb. 12, 2025). The Catalog entry cites that very ruling — 2025 WL 2684036 (C.D. Cal. Feb. 12, 2025) — yet describes the case solely by the later arbitration stipulation, omitting the denial. Order at 4.

In *Shah v. JPMorgan Chase Bank, N.A.*, Catalog item 18, the court denied dismissal of Shah's UCL unfair-prong claim, ECF No. 13-4 at 12 (Mar. 4, 2025), and on Chase's renewed motion denied dismissal of his ECOA retaliation claim, *id.* at 24 (May 8, 2025). The Catalog entry reports only that "[t]wo claims dismissed" and that Shah dismissed the action. Order at 6.

In *Shah v. Capital One, N.A.*, Shah's claims survived dispositive motions twice: the court held that he "may proceed with his ECOA claim," ECF No. 13-4 at 38 (Apr. 7, 2025), and thirteen months later sustained his ECOA retaliation, UCL, and declaratory-judgment claims against a second motion, *id.* at 54, 62–63 (May 7, 2026). Capital One appears nowhere in the Catalog — although its case number appears on the face of Crain's own Exhibit I, the Chase docket, in a January 22, 2025 notice of related cases. (Ex. I, ECF No. 12-12.)

And in *Citibank I*, Catalog item 5, Shah holds a confirmed merits award — $1,500 in ECOA punitive damages and $1,500 in contract damages, plus interest, with the AAA's fees and the arbitrator's compensation borne by Citibank — reduced to judgment on February 15, 2024. *Shah v. Citibank, N.A.*, No. 1:22-cv-02437 (N.D. Ill.); ECF No. 13-1 ¶ 4; ECF No. 13-3 (Decl. Ex. B) (award and confirming order); *see also* Reply RJN Ex. CC, ECF No. 21-8 (the award, filed by Crain itself). The entry concedes that the arbitrator "awarded Plaintiff $3,000 in damages," Order at 3, yet catalogs the case among matters "determined adversely."

These rulings answer the question *Molski* directs and the Order never asked: whether the litigant has "an objective good faith expectation of prevailing." 500 F.3d at 1058. A litigant whose claims Article III judges have repeatedly held legally sufficient is not a litigant pursuing claims "patently without merit." *Moy*, 906 F.2d at 470. The district court did not weigh these outcomes and find them insufficient; it did not mention them. A court may not count filings in the vexatiousness tally while excluding their outcomes, and a finding that lacks record support — here, one the record contradicts — is clearly erroneous. *Hinkson*, 585 F.3d at 1262; *Anderson*, 470 U.S. at 573–74.

### E. The Order violated its own criteria.

The Catalog promised to list "only the cases that were determined adversely against, or voluntarily dismissed by, Plaintiff." Order at 2. The word "only" excluded

38

nothing: the Order counts "at least twenty-nine proceedings" initiated since 2021, and the Catalog that follows contains twenty-nine entries — the purported subset and the announced universe are the same list. (Order at 2, 2–7.) Every proceeding the court counted was coded adverse or abandoned, including the case Shah won; matters fitting neither description — Capital One among them — were not excluded from the Catalog but erased from the count. *See supra* Part III.D. It then counted at least three cases that were neither: *Udemy* ("Stayed by Joint Stipulation; pending arbitration," Order at 7), *Citibank II* ("parties filed joint stipulation to begin arbitration," Order at 4), and *Amplitude* ("stayed pending final resolution of the class action," Order at 5). A stay entered on the parties' joint stipulation — with the defendant's agreement — is adverse to no one.[3] Nor does the Catalog's anchor qualify. Crain's own exhibit index describes the PayPal action — the exemplar from which every asterisked entry takes its definition, *see supra* Part II — as a case that "was ultimately dismissed by stipulation." (ECF No. 12-1 at 4.) A dismissal both parties stipulated to is neither a case "determined adversely against" Shah nor one

---

[3] *Udemy* and *Amplitude* each ended after the Order issued, by a stipulation the defendant signed, with each side bearing its own fees. (Mot. for Judicial Notice Exs. 3–4.) A dismissal the defendant stipulated to under Rule 41(a)(1)(A)(ii) is neither a case "determined adversely against" Shah nor one "voluntarily dismissed by" him; and a disposition entered four days after the Order cannot supply record support the Order lacked when it issued.

"voluntarily dismissed by" him. The entry that anchors the Catalog fails the Catalog's own admission criteria.

The Order's stage-of-disposition findings fare no better. It states that "Courts resolved most of Plaintiff's actions during the pleading stage," Order at 2; that Shah "voluntarily dismissed these actions before defendants could file an answer or before the court could rule on defendants' motions to dismiss," Order at 9; and it rests harassment in part on his "failure to try any CIPA (or other claims in the above record) on the merits," Order at 9. Footnote 5, the sole support for the "sufficiently numerous" finding, asserts that none of the referenced complaints "made it past the pleading phase," having been "dismissed voluntarily or by the court at the infancy of the case." Order at 8 n.5. The case in which the court made that finding refutes it. Challenged at the pleading stage, Shah amended rather than dismissed. (ECF No. 23.) Challenged again, he opposed on the merits. (ECF Nos. 32, 32-1.) Crain's reply landed on July 20, 2026 — the day the Order issued — leaving the motion fully briefed, set for hearing on August 3, and awaiting decision. (ECF No. 35.) The district court announced a pattern of dismissal-when-challenged on a docket that showed the opposite, and it did so without needing judicial notice of anything: unlike the six absent documents supporting the Catalog's findings, *see supra* Part I.B, the record of the case before it was complete and firsthand. Shah's dismissal came three

40

days later, after the designation, and with prejudice — extinguishing his claims permanently rather than preserving them. (ECF No. 36.)

The record contradicts that picture across the Catalog: *American Express* was compelled to arbitration and carried through to a final, merits-preclusive adjudication: the arbitrator dismissed with prejudice, the district court denied vacatur and confirmed the award, and judgment was entered. Order Denying Motion to Vacate at 6–7 (Case No. 2:24-cv-06953-MWF, June 25, 2026); *Mondelez*, which answered on the merits, was defended for ten months, Order at 4–5 (filed September 10, 2024; dismissed July 9, 2025); *Capital One* remained in active litigation into 2026, its claims surviving a second dispositive motion on May 7, 2026, ECF No. 13-4 at 40–63; *Citibank I* proceeded through arbitration to award and judgment; and, as shown above, three courts ordered defendants to answer or litigate claims the motions could not defeat. And *WPromote* — the Catalog's "Complaint dismissed" entry — was not abandoned but briefed to decision on direct appeal, a fact Shah's own opposition placed before the court. (ECF No. 13-3 at 4–9.)

*Udemy* illustrates the good-faith inquiry the Order skipped. Shah filed that action on June 13, 2026 — thirty days after *Jules v. Andre Balazs Properties*, 146 S. Ct. 1209, 1217, 224 L. Ed. 2d 708 (2026), unanimously held that a federal court staying claims under § 3 of the Federal Arbitration Act retains jurisdiction under §§ 9 and 10 to confirm or vacate the resulting award. The *Udemy* complaint asserts

41

federal Wiretap Act claims, 18 U.S.C. §§ 2511, 2520, supplying original jurisdiction under 28 U.S.C. § 1331 independent of any arbitration — the *Jules* posture exactly. Order at 7. Filing within a month of new Supreme Court authority to preserve the federal forum it guarantees is the opposite of bad faith; the action was then stayed by joint stipulation — and the court characterized it otherwise without the complaint or docket before it. *See supra* Part I.B.

### *F. The harassment inferences are contradicted by the record or prove too much.*

In finding harassment, a district judge "needs to be careful not to conclude that particular types of actions filed repetitiously are harassing," and must instead "discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court." *De Long*, 912 F.2d at 1148 (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam)). Each inference from which the Order derived that intent is contradicted by the record or proves too much.

**1. The "avoidable injury" inference is inverted.** Invoking *Molski*'s observation that "even a young child who touches a hot stove quickly learns to avoid pain," the Order found "repeated filings asserting the same avoidable injury" suspect. Order at 9. The pleaded record runs the other way. The FAC's own table alleges that all sixty violations arose from searches conducted in October 2025, on or before October 31, 2025, when Shah documented the interception with browser network captures. ECF No. 23 at 29–30 (FAC ¶¶ 73–74); *see id.* ¶¶ 30–31, 39. Shah alleged

42

no injury after discovery — no return to the stove. The analogy would have force only if the searches post-dated that documentation; the chronology Shah pleaded is the reverse. The Order's two predicate observations do not repair the inference. That Shah "has the means and knowledge to verify if a website is actively transmitting his search queries" (Order at 9) describes detection after the fact: a network capture records an interception that has already occurred, and the capacity to document a completed interception is not the capacity to avoid one. That Shah is "well-acquainted with industry practices that may violate his privacy" (Order at 9) cannot make the injury avoidable without inverting the statute: CIPA conditions interception on consent, Cal. Penal Code § 631(a), and on the Order's logic a person who learns that undisclosed interception is widespread could "avoid" injury only by ceasing to search the web — or be deemed to have accepted the practice. Knowledge of a widespread violation is not consent to it. And the stove in *Molski* described injuries whose occurrence the district court doubted, 500 F.3d at 1059; the Order nowhere finds that the interceptions Shah documented did not occur.

**2. The absence of trials proves nothing.** The Order treated Shah's "failure to try" his cases as evidence of a purpose to harass. Order at 9 & n.6. Trial is the exceptional disposition for every litigant. In fiscal year 2025, of 407,379 civil cases terminated in the United States district courts, 1,681 — 0.4 percent — were terminated during or after trial. Admin. Office of the U.S. Courts, Judicial Business

43

of the United States Courts, tbl. C-4 (Sept. 30, 2025)[4]. The rate was 4.3 percent in 1990 and has fallen ever since. Admin. Office of the U.S. Courts, Judicial Facts and Figures, tbl. 4.10 (2024); see Marc Galanter, The Vanishing Trial, 1 J. Empirical Legal Stud. 459, 459 (2004) (11.5 percent in 1962 to 1.8 percent in 2002). The Supreme Court recognized the same reality when the rate was more than ten times today's: "[l]ess than 5% of cases filed in federal court end in trial," and "the bulk of the nontrial terminations reflect settlements." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 n.22 (1994) (citing Administrative Office data). An inference of harassment drawn from untried cases proves too much: it would render substantially every federal plaintiff vexatious.

**3. Settlement-linked dismissal is encouraged conduct.** Dismissal following settlement is the disposition this Circuit prefers, not evidence of bad faith. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). "A settlement rate no more indicates a plaintiff's lack of confidence than it does a defendant's. A high settlement rate is a fact of modern litigation." *Wilson*, 411 F. Supp. 2d at 1201. A plaintiff who accepts a resolution, or declines to press opposition to a motion he concludes is

---

[4] https://www.uscourts.gov/sites/default/files/document/jb_c4_0930.2025.pdf

44

sound, is doing what the system asks; insisting on trial in those circumstances would itself impose the needless burden the Order condemns.

**4. The coercive-settlement and jurisdictional-manipulation findings rest on no evidence.** The Order concluded that Shah's "purpose is to harass defendants into coercive settlements," resting in part on a finding that he submitted "enough search queries in an attempt to establish the amount in controversy for subject matter jurisdiction." Order at 9. No settlement demand, no settlement communication, and no evidence of any settlement's terms appears anywhere in the record; the coercion finding has nothing to rest on. The one settlement-related fact the court could observe firsthand runs the other way: Shah dismissed this action with prejudice, surrendering every claim against Crain permanently. (ECF No. 36.)

The amount-in-controversy finding is likewise refuted by the pleaded chronology: the pleaded searches preceded the documentation of any violation, ECF No. 23 at 29–30 (FAC ¶¶ 73–74), and searches cannot have been performed to engineer jurisdiction over violations not yet known to exist. In *Molski*, the coercion inference sat atop express findings of plainly false injury allegations, 500 F.3d at 1059–61; no comparable finding exists here.

**5. The claims are not "patently without merit."** Finally, the legal theory underlying Shah's CIPA § 631(a) actions — that search terms transmitted to third parties are "contents" of a communication — is established law in this Circuit. *In re*

45

*Zynga Privacy Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (a user's search request communicated in a URL can constitute "contents"); *Mikulsky v. Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225, at 1 (9th Cir. June 20, 2025) (mem.) (allegations of real-time capture of the contents of website communications state a § 631(a) claim)*; Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 858–59 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication.").[5] A designation reserved for litigants whose claims are patently meritless cannot rest on a portfolio of claims the governing case law sustains.

## IV. THE PRE-FILING ORDER IS NOT NARROWLY TAILORED, AND THE DISTRICT COURT DID NOT CONSIDER LESS RESTRICTIVE ALTERNATIVES.

Even where the first three *De Long* requirements are met — and here none is — a pre-filing order "must be narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d at 1148. The order here fails that requirement three times over: its prohibition sweeps far beyond the conduct the district court identified, the court considered no less restrictive alternative beyond a single footnote, and the decree supplies no procedure by which leave to file may even be sought.

---

[5] *Accord Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 (N.D. Cal. 2025); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893–94 (S.D. Cal. 2025); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795–96 (N.D. Cal. 2022); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015).

46

### A. The bar sweeps an entire statutory scheme, plus an undefined residual category, to address a vice the Order defined narrowly.

The vice the Order identified was specific: repetitive filings alleging that website operators intercepted Shah's communications in violation of California Penal Code § 631(a) — "seven complaints against seven different defendants" in seven months, each "nearly identical." (Order at 1, 8 n.5.) The remedy is not specific. The decree bars, absent leave, "any new case filed in the Central District of California that alleges any claims arising under the California Invasion of Privacy Act ('CIPA') or other related digital privacy claims." (Order at 11.)

That prohibition reaches the whole of CIPA, a chapter of the Penal Code comprising many distinct offenses: eavesdropping on confidential communications, Cal. Penal Code § 632; interception of cordless or cellular communications, *id.* § 632.7; use of pen registers and trap-and-trace devices, *id.* § 638.51; and more. Nothing in the Catalog involves those provisions. A complaint alleging that a company recorded a confidential telephone call without consent — conduct bearing no resemblance to the website-tracking claims the court described — would nonetheless require leave. If restrictive orders are "couched in overly broad terms, injunctions against future litigation may block free access to the courts." *De Long*, 912 F.2d at 1148 (quoting *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1525 (9th Cir. 1983)).

47

The residual clause is worse, because it has no boundary at all. "[O]ther related digital privacy claims" is, like the term this Court condemned in *Ringgold-Lockhart*, "an indefinite term open to broad interpretation, both by the district court and, prophylactically, by" the enjoined litigant. 761 F.3d at 1066. The Order's text does not disclose whether the clause reaches a claim under the Computer Fraud and Abuse Act; a Telephone Consumer Protection Act claim; a Song-Beverly Credit Card Act claim, Cal. Civ. Code § 1747.08, arising from data collection at a physical register; a negligence claim arising from a data breach; or a right-of-publicity claim under Cal. Civ. Code § 3344. That overbreadth "presents 'the danger' that it 'will leave [litigants] uncertain as to what [they] may or may not do without' running afoul of the court's order," *Ringgold-Lockhart*, 761 F.3d at 1066–67 (quoting *Wood*, 705 F.2d at 1525), "unduly chilling their right to free access to the courts," *id.* The Order's assurance that it "does not restrict Plaintiff from filing other claims not covered by the pre-filing order" (Order at 10) only restates the problem: no one can tell from the Order which claims are covered.

The decree is also broader than the request the court analyzed. Crain proposed, and the Order's tailoring discussion approved, a requirement keyed to "claims under the California Invasion of Privacy Act (Cal. Penal Code § 630, et seq.) or related consumer digital privacy statutes." (Order at 10, quoting Proposed Order ¶ 5, ECF No. 12-3), The decree as entered substitutes "other related digital privacy claims" —

dropping "consumer" and replacing "statutes" with "claims," and thereby reaching non-consumer contexts and non-statutory theories the analyzed language did not. The tailoring analysis never addressed the language the court actually entered.

*Molski* does not save the order; it condemns it. The order affirmed there covered "only the type of claims Molski had been filing vexatiously—ADA claims," 500 F.3d at 1061 — a one-to-one fit between the claim type generating roughly 400 suits and the claim type screened. Here the identified vice is one section of one statute, and the bar is an entire statutory scheme plus an open-ended residual category. That is "an insufficiently close fit between the terms of the injunction and the problem it purports to address," *Ringgold-Lockhart*, 761 F.3d at 1067, and it cannot stand. *De Long*, 912 F.2d at 1148.

### B. The district court considered one alternative, in one footnote, and answered the wrong question.

Because a pre-filing order is "an extreme remedy that should rarely be used," *Molski*, 500 F.3d at 1057, it "should be a remedy of last resort." *Ringgold-Lockhart*, 761 F.3d at 1062. Whether "other sanctions would be adequate to protect the courts and other parties" is "particularly important." *Id.* "The Federal Rules of Civil Procedure provide courts with a means to address frivolous or abusive filings: Rule 11 sanctions," *id.* at 1065, and when conduct "could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent

49

power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Before entering a broad pre-filing order applicable to future cases, a district court "assuredly should have considered whether imposing sanctions such as costs or fees . . . would have been an adequate deterrent." *Ringgold-Lockhart*, 761 F.3d at 1065. In *Ringgold-Lockhart*, that omission was itself reversible error. *Id.* at 1065–67.

The Order's entire treatment of alternatives is footnote 8. It acknowledges the *Ringgold-Lockhart* obligation, then considers exactly one lesser measure — "a Security of Costs alone" — and rejects it on the ground that Shah "has voluntarily incurred the costs of initiating at least twenty-eight proceedings across four courts." (Order at 10 n.8.)[6] That reasoning answers the wrong question. Filing fees are the price of access every litigant pays voluntarily; they are not sanctions, and a litigant's willingness to pay them says nothing about whether deterrent sanctions — Rule 11 measures, awards of costs or fees, a warning, or a narrower order confined to the § 631(a) claims the court described — would "suffice[] to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4); *Ringgold-Lockhart*, 761 F.3d at 1065. None is mentioned anywhere in the Order, and none had ever been imposed or, so far as the record discloses, even sought: the record contains no motion for Rule 11 sanctions by any defendant in any of the twenty-nine catalogued proceedings — Crain itself

---

[6] The same footnote counts "at least twenty-eight proceedings" while the Order's body counts "at least twenty-nine" (Order at 2). *See supra* Part I note 1.

50

met the operative pleading with an ordinary Rule 12 motion, not a Rule 11 motion — and no sanction of any kind ever imposed on Shah by any court in any of them. The first sanction ever imposed on Shah was the most restrictive one available. Under *Ringgold-Lockhart*, the failure to consider the lesser ones first independently requires vacatur. 761 F.3d at 1065, 1066–67.

## C. The decree supplies no procedure for seeking leave at all.

The operative decree is two sentences: it declares Shah a vexatious litigant, and it enters "[a] Prefiling Order . . . against Plaintiff for any new case" alleging CIPA or related digital privacy claims. (Order at 11.) That is the whole of it. The Order does not say how Shah applies for leave, what showing or declaration he must submit, who reviews a proposed complaint, what standard governs, or what the Clerk is to do with a lodged filing; the only administrative trace is the distribution line copying the ruling to the intake clerks. (Order at 11.)

Every order in this Circuit's pre-filing line has told the litigant what to do. The order affirmed in *Molski* required a motion for leave accompanied by "a copy of this order and a copy of the proposed filing," 500 F.3d at 1052 (quoting the district court), and was sustained precisely because it "merely subjects Molski's complaints to an initial screening review by a district judge" and "will not deny Molski access to courts on any ADA claim that is not frivolous." *Id.* at 1061. Even the order this Court vacated in *De Long* prescribed a captioned "Application Seeking Leave to File"

51

supported by a three-part declaration. 912 F.2d at 1146–47. A screening mechanism is what separates a permissible pre-filing condition from a flat bar; an order that conditions access on leave while supplying no path for seeking it functions, in practice, as the flat bar this Court's cases forbid — and, with no stated standard, it insulates any future denial of leave from meaningful review. The omission compounds the vagueness above: Shah is left uncertain not only what is covered, but how compliance is even attempted. The absence of any defined, reviewable procedure confirms that this order was not the product of the careful tailoring *De Long* demands, and it must be vacated. *De Long*, 912 F.2d at 1148; *Ringgold-Lockhart*, 761 F.3d at 1066–67.

## CONCLUSION

The Order fails every *De Long* requirement: it was entered without a meaningful opportunity to be heard on the materials that decided it, on a record that cannot support appellate review, without sustainable findings of frivolousness or harassment, and with a remedy tailored to no vice the court identified. Shah respectfully requests that the Court vacate the vexatious-litigant designation and the pre-filing order in their entirety. In the alternative, the Court should vacate the Order and remand for any further proceedings consistent with *De Long* and this Court's decision.

Dated: July 28, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
(224) 246-2874
newvivekshah@gmail.com
*Plaintiff-Appellant, pro se*

## STATEMENT REGARDING ORAL ARGUMENT

Shah respectfully submits that this appeal can be decided on the briefs and the record without oral argument. *See* Fed. R. App. P. 34(a)(2)(C). Consistent with his concurrently filed motion to expedite, Shah waives oral argument and requests submission on the briefs at the Court's earliest convenience. If the Court concludes argument would assist it, Shah will appear.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant states that he is aware of no related cases pending in this Court within the meaning of that Rule. For the Court's information, Appellant is a party to four other appeals pending in this Court: *Shah v. Robinhood Credit, Inc.*, No. 25-6713; *Shah v. JPMorgan Chase Bank, N.A.*, No. 25-6333; *Shah v. Russco57, LLC*, No. 26-249; and *Shah v. TalentBridge, Inc.*, No. 26-3514. Each arises from a different district court case involving a different defendant and a different record, and none raises the same or closely related issues as this appeal.

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Court's electronic filing system, which will serve notice of the filing on all counsel of record, who are registered users of that system.

/s/ Vivek Shah

Vivek Shah,

*Plaintiff-Appellant, pro se*

# ADDENDUM

Pursuant to Ninth Circuit Rule 28-2.7, the following pertinent statutory and rule provisions are reproduced verbatim.

## Addendum Table of Contents

28 U.S.C. § 1651(a) ......................................................................................Add. 1

Federal Rule of Evidence 201........................................................................Add. 1

Cal. Penal Code § 631(a) ..............................................................................Add. 2

## 28 U.S.C. § 1651 — Writs

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

## Federal Rule of Evidence 201 — Judicial Notice of Adjudicative Facts

(a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

(c) Taking Notice. The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

(d) Timing. The court may take judicial notice at any stage of the proceeding.

(e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

(f) Instructing the Jury. In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

Add. 1

**California Penal Code § 631(a)**

(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170. If the person has previously been convicted of a violation of this section or Section 632, 632.5, 632.6, 632.7, or 636, the person is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 26-3514

I am the attorney or self-represented party.

**This brief contains** 12,731 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Vivek Shah **Date** July 28, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*